IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

SALLY L. OWENS,

            Plaintiff

VS.

JOANNE B. BARNHART,
S.S. Commissioner,

           Defendant

NO. 5:05-CV-203 (CWH)

SOCIAL SECURITY APPEAL

## O R D E R

This is a review of a final decision of the Commissioner of Social Security denying the plaintiff's claim for benefits under the Social Security Act, 42 U.S.C. § 423. All administrative remedies have been exhausted. Jurisdiction arises under 42 U.S.C. § 405(g). Both parties have consented for the United States Magistrate Judge to conduct any and all proceedings herein including the ordering of the entry of judgment. Any appeal from this judgment permitted by law may be taken directly to the Court of Appeals of the Eleventh Circuit in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 636(c)(3).

On March 22, 2002, plaintiff filed an application for Disability Insurance Benefits. She alleged disability commencing on June 1, 2000, due to obesity, high blood pressure, mental retardation, thyroid problems, depression, and high cholesterol. The application was denied initially, on October 25, 2002 and after further review, on March 3, 2003. After a hearing in front of an administrative law judge (ALJ), the claim was again denied on November 18, 2004. Finally, on April 25, 2005 the Appeals Council denied plaintiff's claim. This civil action was commenced after the recommendation to deny benefits was adopted as the Commissioner's final decision in this case.

### LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971).

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler, supra*, at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id*.

The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). However, the claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

A claimant seeking Social Security disability benefits must demonstrate that he suffers from an impairment that prevents him from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. §§ 404.1 *et seq*.

Under the regulations, the Commissioner determines if a claimant is disabled by a five step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevents the performance of any other work.

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). *See also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each impairment, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence presented is grounds for reversal. *Id*.

## DISCUSSION

In this appeal, the plaintiff contends that the Commissioner's decision is not based upon substantial evidence because the Commissioner, through the ALJ (1) erred by finding that the plaintiff's alleged mental retardation does not satisfy the level of severity described in 20 C.F.R. pt. 404, subpt. P, app. 1, §12.05; (2) failed to comply with appropriate authority when finding that plaintiff did not comply with prescribed treatment; (3) improperly weighed the evidence of examining physicians and failed to explain the weight given the medical evidence; and (4) failed to properly evaluate plaintiff's subjective complaints.

### 1. Mental Retardation Standard

The standards for SSI benefits being conferred based on an individual's mental retardation are set out in 20 C.F.R. pt. 404, subpt. P, app. 1, §12.05.  That section holds that if an individual is not capable of taking an intelligence test or if a valid intelligence test demonstrates that an individual's mental retardation is severe enough (i.e. IQ below 60), the retardation alone can entitle the individual to SSI benefits.  §§12.05 A & B.  If *valid* results of the intelligence test demonstrate an IQ of 60 through 70, the individual may be entitled to benefits if other impairments or limitations are present (§12.05 C) or if the individual has other restrictions and difficulties in specific areas (§12.05 D).  Listing 12.00(D)(6)(c) provides that "where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."

Jerry Dalton, Ed. D. diagnosed the plaintiff with a full scale IQ of 64; a verbal score of 65; and a performance score of 69, but admitted that the result "may be a slight under representation of [her] intellectual potential."  Tr. 170.  The ALJ, basing her finding on Robert Koontz, Ph. D., who averred that the plaintiff's "literary skills [are] far above what she demonstrated" and that the IQ test results were invalid (Tr. 234), chose to disregard Dr. Dalton's findings.  Dr. Koontz does not appear to have commented on any of the individual IQ numbers obtained through Dr. Dalton's testing, discussing only the plaintiff's literary skills.

The ALJ's opinion does not determine whether any of the three IQ scores presented validly showed the plaintiff's IQ to be greater or less than 70, which is of great importance because a score below that number would trigger an analysis under §12.05(C) or (D). With respect to the IQ scores, Dr. Dalton used the vague term "slight under representation," and Dr. Koontz apparently dismissed the entire test based on his personal observations of the plaintiff's literary skills, mentioning nothing about the other two tested areas. The ALJ did not state in her opinion that she disregarded the test results, but rather stated that they were "questionable". The ALJ should have either stated that she found the IQ test results completely invalid or analyzed the plaintiff under §§12.05(C) and (D).[2] Her failure to do either of those things constitutes error requiring further consideration below.

### 2. Plaintiff's noncompliance with physicians' prescribed treatment

It is uncontested that the plaintiff had been advised by her doctors to lose weight by eating a more healthy diet and exercising and that the plaintiff has failed to do either of those things. Dr. Dalton's report acknowledges that "if the claimant were less obese, the severity of [her medical problems] may significantly diminish." Tr. 171. In this case the ALJ found that obesity was one of the "severe" impairments claimed by the plaintiff and that many of the plaintiff's other impairments were related to her obesity. With that evidence and plaintiff's noncompliance with doctors' orders to comply with a weight loss routine, the ALJ did not err in finding that the plaintiff did not comply with prescribed treatment that could have restored her ability to work.

The ALJ's ruling complied with 20 C.F.R. §§ 404.1530 and 416.930. The plaintiff points to Social Security Ruling 82-59 which states that in order for benefits to be denied based on non-compliance with treatment, such treatment must be "clearly expected to restore capacity to engage in any SGA." The plaintiff did nothing to remedy her obesity, and there is evidence in the record that many of plaintiff's complaints would be alleviated if she were not so obese. Accordingly, the court finds that the ALJ correctly applied applicable law in finding that the plaintiff failed to follow prescribed treatment and that as such, the plaintiff's obesity should be discounted when weighing the plaintiff's disabilities. Averring that thyroid problems impeded the plaintiff's weight loss is purely hypothetical because the record indicates nothing to show that the plaintiff has even tried to adhere to a healthier lifestyle.

---

[2] There may not be enough evidence in the record to indicate whether the plaintiff should be evaluated under §12.05. If the ALJ finds that to be the case, further testing and/or evaluation is warranted.

This case is distinguishable from cases where obesity has been found not to have been inherently remediable. In *McCall v. Bowen*, 846 F.2d 1317 (11th Cir., 1998), the court of appeals held that, "obesity, of itself, does not justify the conclusion that [the plaintiff] has refused treatment nor the consequent denial of disability benefits." *Id.* at 1319. The court went on to hold that "[f]urther findings of fact and conclusions of law are required before the Secretary may determine that a claimant has refused treatment." *Id.* In the current case, the plaintiff was directed by her physicians to exercise and eat a more healthy diet, which could lead to weight loss and restore her ability to engage in SGA. The plaintiff did neither of those things. Such evidence is an additional fact demonstrating that obesity itself was not the reason she was denied benefits, but instead, it was her failure to adhere to doctors' specific instructions on ways to lose weight that led to the ALJ's discounting the plaintiff's obesity as a disability.

### 3. ALJ evaluation of physicians' opinions

The plaintiff contends that the ALJ erred when she rejected the opinions of treating and examining physicians and that she failed to apply the correct standards. The Commissioner points to the ALJ's opinion, noting in particular the ALJ's statement that no examining or treating physician indicated that the plaintiff was disabled or could not work. Tr. 31. In her decision, the ALJ clearly went through each impairment alleged by the plaintiff, considering the credibility of the information and the severity of each disability. Tr. 27-33.

In arriving at her conclusion, the ALJ specifically noted that "[a]ll of the claimant's alleged symptoms have been considered in combination without regard to whether any impairment if considered separately would be vocationally significant." Tr. 31. The ALJ used the proper standards, and without the ability to reweigh evidence or substitute its judgment for that of the Commissioner, this court must find that, with the exception of the mental retardation standard discussed above, the ALJ used the correct standards.

### 4. ALJ's evaluation of plaintiff's subjective complaints

The ALJ clearly indicated that her analysis treated the plaintiff's complaints as "not credible to the degree alleged and are not consistent with treating source evidence". The ALJ went on to state that the plaintiff's

> *osteoarthritis of the knees and carpal tunnel syndrome have been described as 'mild.' Her blood pressure and Graves Disease are controlled with medication. There is no indication that the claimant has sought or received professional mental health treatment for her alleged depression. Her obesity is treatable by adherence to a strict and prudent diet and exercise as recommended by her doctors. While claimant may have some symptoms, I find that her subjective complaints are not credible to show disability.*

Credibility issues are not to be determined by the courts but left to the discretion of the Commissioner. Accordingly, this court will not second guess the findings of the ALJ in this regard.

### Conclusion

The ALJ's conclusions about the plaintiff's noncompliance with prescribed treatment, evaluation of physicians' opinions, and evaluation of the plaintiff's subjective complaints are supported by substantial evidence and the correct standards were used. However, since the ALJ did not find that the plaintiff's IQ scores were all above 70, stating rather that the scores (the lowest of which was 64) were "questionable," the ALJ should have analyzed the plaintiff's conditions pursuant to §§12.05(C) and (D).[3]

In light of the above, **IT IS ORDERED** that the Commissioner's decision in this case be **REMANDED** for further proceedings in accordance with this opinion.

SO ORDERED, this 17th day of MARCH, 2006.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3] Since valid determination of the plaintiff's IQ may be impossible based on the evidence in the medical record, further testing and/or evaluation may be necessary in order to assure a just result.